```
                 United States District Court
                    District of Massachusetts
```

|   |   |
|---|---|
| BioNTech SE, BioNTech Manufacturing GmbH and Pfizer, Inc. ) ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 22-11202-NMG |
| v. ) ) | |
| CureVac AG ) ) | |
| Defendant. ) ) ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs BioNTech SE, BioNTech Manufacturing GmbH (together, "BioNTech" or "plaintiff") and Pfizer, Inc. ("Pfizer" or "plaintiff") (collectively, "plaintiffs") bring this action for declaratory judgment that they do not infringe certain patents of defendant CureVac AG ("CureVac" or "defendant"). Pending before the Court now is CureVac's motion to dismiss the complaint for lack of personal jurisdiction. For the reasons that follow, the Court concludes that it does not have personal jurisdiction over CureVac but rather than dismiss the action the Court will transfer it to the United States District Court for the Eastern District of Virginia.

**I.   Background**

   **A.   Parties**

Plaintiff, BioNTech SE and its wholly owned subsidiary, BioNTech Manufacturing GmbH, are both German companies with principal places of business in Mainz, Germany.  BioNTech is a global biotechnology company specializing in the development of novel medicines.  According to the complaint, it is recognized as an industry leader in messenger ribonucleic acid ("mRNA") vaccine technology.

Plaintiff Pfizer, Inc. is a Delaware corporation with its principal place of business in New York City.  It is a research-based biopharmaceutical company.

Defendant CureVac AG is a German company with a principal place of business in Tübingen, Germany.  CureVac is a clinical stage biotechnology company.  It develops mRNA-based biologics including vaccines and anti-cancer therapies.  Although a foreign company, CureVac has entered into several research and development agreements with organizations in the United States, including: 1) a development agreement with Arcturus Therapeutics, Inc. in San Diego, California related to nanoparticle delivery vehicles and 2) sponsored research agreements to conduct clinical research using CureVac's mRNA-based therapeutic drug candidates with Yale University in New

Haven, Connecticut, and The Schepens Eye Research Institute and Beth Israel Deaconess Medical Center both in Boston, Massachusetts.

**B.   Factual and Procedural History**

Plaintiffs manufacture and market COMIRNATY®, a COVID-19 vaccine.  CureVac also attempted to develop a COVID-19 vaccine but was ultimately unsuccessful.  In this case, plaintiffs seek a declaration that their vaccine does not infringe three CureVac patents: U.S. Patent Nos. 11,135,312 ("the '312 patent"); 11,149,278 ("the '278 patent") and 11,241,493 ("the '493 patent") (collectively, "the patents-in-suit").

As alleged in the complaint, in February, 2022, after CureVac had withdrawn its vaccine candidate from the regulatory approval process, it contacted BioNTech to initiate discussions regarding the potential licensing of certain intellectual property ("IP") rights to BioNTech.  The parties held meetings both in person in Mainz, Germany and via videoconference regarding CureVac's IP portfolio throughout the spring of 2022, culminating in a June, 2022 meeting as to CureVac's threats to assert its patents in connection with the COMIRNATY® vaccine.

When dispute resolution efforts failed, CureVac filed an infringement complaint in the Düsseldorf, Germany Regional Court against BioNTech SE, BioNTech Manufacturing GmbH and BioNTech

- 3 -

Manufacturing Marburg GmbH, alleging that the manufacture and sale of the COMIRNATY® vaccine infringed the European counterparts of the patents-in-suit. That complaint did not name Pfizer because Pfizer does not purportedly manufacture or sell COMIRNATY® in Germany. According to the complaint, however, CureVac's chief executive announced in a media call that he was not ruling out further legal action against Pfizer.

Plaintiffs submit that they filed this suit for declaratory judgment in July, 2022 to resolve their rights with respect to CureVac's patents-in-suit and CureVac's repeated threats of litigation, including the complaint in Germany, which were disrupting plaintiffs as they continued their COVID-19 research and development work. Defendant CureVac subsequently filed the pending motion to dismiss for lack of jurisdiction or, in the alternative, to transfer pursuant to 28 U.S.C. § 1631.

## II.   Motion to Dismiss

### A.   Legal Standard

On a motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of showing that the court has personal jurisdiction over defendant. Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, the motion is to be decided without first holding an evidentiary

hearing, the Court applies the "prima facie" standard of review and takes plaintiffs'

> properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiffs'] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A plaintiff cannot rely, however, on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate that jurisdiction exists." Id. (internal citations omitted); see Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022).

This Court's jurisdiction may be either "specific" or "general." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001). Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. Id. Those contacts must demonstrate that defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998). General jurisdiction, on the other hand, exists when the defendant has "engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Swiss Am. Bank, 274 F.3d at 618. Here, because plaintiffs' opposition brief contests only the

lack of specific jurisdiction, this Court will narrow its jurisdictional analysis accordingly.

In patent infringement cases, "issues of personal jurisdiction are controlled by the law of the United States Court of Appeals for the Federal Circuit." Pharmachemie B.V. v. Pharmacia S.p.A., 934 F. Supp. 484, 486 (D. Mass. 1996) (citing Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994)). Federal Rule of Civil Procedure 4 governs the personal jurisdiction analysis. A federal court may exercise personal jurisdiction under either 1) Fed. R. Civ. P. 4(k)(1) and the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, or alternatively 2) Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm rule. See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1293 (Fed. Cir. 2009).

    B.    **Application**

        1.    **Fed. R. Civ. P. 4(k)(1)**

The Massachusetts long-arm statute imposes limits upon the exercise of jurisdiction more restrictive than the demands of constitutional due process. SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Thus, the Massachusetts Supreme Judicial Court ("the SJC") has instructed that, in order to avoid unnecessary consideration of constitutional questions, the personal jurisdiction inquiry commences with consideration of

the long-arm statute. Mojtabai v. Mojtabai, 4 F.4th 77, 85 (1st Cir. 2021). Only if the statutory requirements are satisfied should the court consider whether its exercise of jurisdiction is permitted by the Constitution. SCVNGR, Inc., 85 N.E.3d at 56; see Exxon Mobil Corp. v. Attorney General, 94 N.E.3d 786, 792 n.3 (Mass. 2018).

The Massachusetts long-arm statute sets forth eight grounds upon which jurisdiction may be based. M.G.L. c. 223A, § 3(a)-(h). Subsection 3(a), upon which the parties focus their arguments, provides for the exercise of jurisdiction over a defendant when the cause of action at issue arises from its transaction of business in the Commonwealth. M.G.L. c. 223A, § 3(a); see SCVNGR, Inc., 85 N.E.3d at 55. Accordingly, to establish jurisdiction under § 3(a), plaintiff must allege facts which satisfy two requirements: 1) that defendant transacted business in Massachusetts and 2) that the claims at issue arose from that transaction of business. Exxon Mobil Corp., 94 N.E.3d at 793.

Neither condition is met here. Although the transacting-business requirement is construed broadly, Tatro v. Manor Care, 625 N.E.2d 549, 551 (Mass. 1994), it nevertheless imposes real limitations, see Lacy v. Jublia Pte Ltd., 185 N.E.3d 920, 2022 WL 982076, at *3 (Mass. App. Ct. 2022) (collecting cases), which

CureVac's limited in-forum activity fails to meet.  Here, plaintiffs allege CureVac transacted business in Massachusetts by 1) sending at least 25 communications to Massachusetts-based BioNTech US and 2) executing two clinical research agreements in the Commonwealth.

As to the communications, they concerned meetings in Germany between two German companies to discuss licensing.  They did not include a cease-and-desist demand, an allegation of infringement or a threatened lawsuit, which the Federal Circuit has suggested may establish jurisdiction. Cf. Trimble Inc. v. PerDiemCo LLC, 997 F.3d 1147 (Fed. Cir. 2021) (finding personal jurisdiction where defendant patentee sent 22 threatening letters, including a draft complaint for infringement, over three months); Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG, 933 F.3d 1302 (Fed. Cir. 2019) (finding personal jurisdiction when defendant patentee sent a cease-and-desist letter accusing plaintiff of committing patent infringement). Rather, most of the communications related to scheduling meetings in Germany and eight concerned negotiations for a confidentiality agreement to cover the parties' discussions.

With respect to the two clinical research agreements with the Schepens Eye Research Institute and Beth Israel Deaconess Medical Center, both were unrelated to the alleged infringement

of the patents-in-suit. Thus, even if those agreements were some evidence of the transaction of business in Massachusetts, jurisdiction would not lie because the claims here at issue do not arise from the alleged in-forum activity. Exxon Mobil Corp., 94 N.E.3d at 793.

The purported activity is insufficient to afford jurisdiction under the Massachusetts long-arm statute.

### 2. Fed. R. Civ. P. 4(k)(2)

A court may alternatively exercise personal jurisdiction over a defendant pursuant to Fed. R. Civ. P. 4(k)(2) if

> (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process.

Synthes (U.S.A.), 563 F.3d at 1293-94. The parties agree that the first two requirements are satisfied because plaintiffs' claims arise under federal law and CureVac AG is not subject to the general jurisdiction of any other state. Thus, the Court need only inquire as to the due process analysis which, under Fed. R. Civ. P. 4(k)(2), "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." Id. at 1295.

The Federal Circuit considers three factors when conducting a due process analysis with respect to specific jurisdiction:

> 1) whether the defendant "purposefully directed" its activities at residents of the forum, 2) whether the claim "arises out of or relates to the defendant's activities within the forum [and] 3) whether assertion of personal jurisdiction is reasonable and fair.

Apple Inc. v. Zipit Wireless, Inc., 30 F.4th 1368, 1375 (Fed. Cir. 2022).  The first two factors relate to the "minimum contacts" part of the jurisdictional framework and the third addresses the traditional notions of "fair play and substantial justice." Id.

### a.  Minimum Contacts

In this case, the Court concludes that the minimum contacts requirement is not met because CureVac did not purposefully direct its enforcement activities with respect to the patents-in-suit to any entity in the United States. See Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1332 (Fed. Cir. 2008) (defining the relevant inquiry for specific jurisdiction in a declaratory judgment action for non-infringement as the extent to which "defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities.").  The dispute at hand is between two German companies that met and negotiated in Germany.  Although plaintiffs suggest CureVac's 25 communications with BioNTech US in Massachusetts are sufficient

minimum contacts with the United States as a whole, they have proffered no evidence that those communications concerned enforcement activity in this country.

Moreover, CureVac's agreements with organizations both in Massachusetts and California also fail to support specific personal jurisdiction because they are not

> relate[d] in some material way to the enforcement or the defense of the patent[s-in-suit].

Id. at 1336.  Because those agreements are unrelated to enforcement of the patents-in-suit, they do not support a claim of personal jurisdiction. See Genetic Veterinary Scis., Inc., 933 F.3d at 1311 (finding the "minimum contacts" prong met where defendant patentee sent a cease-and-desist letter and performed the additional enforcement activity of sublicensing the asserted patent).

### b. Reasonableness

Finally, even if plaintiffs had proven that CureVac's enforcement activities satisfied the minimum contacts prong of the jurisdictional analysis, which they have not, they cannot demonstrate that the Court's exercise of jurisdiction is reasonable.  The Supreme Court has provided a set of "gestalt factors" to consider in evaluating reasonableness, which include 1) the defendant's burden of appearing; 2) the forum state's

interest in adjudication; 3) the plaintiff's interest in convenient and effective relief; 4) the judicial system's interest in obtaining the most efficient resolution; and 5) the shared societal interest in promoting fundamental substantive social policies. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985); Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995).

Considering the gestalt factors, the Court's exercise of jurisdiction over CureVac would be neither fair nor reasonable. As to the first two factors, CureVac and BioNTech are German corporations and Pfizer is a Delaware corporation. To appear in Massachusetts, a state that lacks a direct interest in a case, would be a burden to defendants. To the extent that plaintiffs seek convenient and effective relief, they could have brought this case in the Eastern District of Virginia, the forum of the United States Patent & Trademark Office ("PTO") which does have an interest in declaratory judgment actions such as the one before this Court.

In sum, plaintiffs have failed to demonstrate that this Court's exercise of jurisdiction over CureVac would comport with the constitutional requirements of personal jurisdiction.

**III.   Transfer**

Because this Court lacks personal jurisdiction over CureVac, it must either dismiss the case or transfer it to the United States District Court for the Eastern District of Virginia.  Under 28 U.S.C. § 1631,

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed.

28 U.S.C. § 1631.  Section 1631 establishes a presumption in favor of transfer which is rebutted only if the transfer is "not in the interest of justice." Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016) (abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82 (2017)).

When determining whether a transfer is appropriate, the Court evaluates 1) whether the action could have been brought in another federal court, 2) whether a limitations period has run that would preclude filing in the correct court and 3) whether the case is frivolous or brought in bad faith. Shelton Bros., Inc. v. Three Pirates, LLC, No. 15-30140-MGM, 2017 WL 1227922, at *6-7 (D. Mass. Mar. 31, 2017) (quoting Britell v. United States, 318 F.3d 70, 74-75 (1st Cir. 2003)).

- 13 -

All three factors weigh in favor of transfer. Plaintiffs could have brought this case in the Eastern District of Virginia pursuant to 35 U.S.C. § 293. Under that statute, also known as the "patent long-arm statute," if a non-resident patentee has not filed with the PTO the name and address of a person in the United States on whom process may be served, the Eastern District of Virginia "shall have jurisdiction" over

> any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293; Venmill Indus., Inc. v. ELM, Inc., 100 F. Supp. 3d 59, 69 n.5 (D. Mass. 2015) ("Section 293, the patent long-arm statute, creates jurisdiction over a foreign patentee for claims affecting the patent in U.S. District Court for the Eastern District of Virginia, unless the foreign patentee designates an alternative agent for service of process.").

Because CureVac has not provided the PTO with written designation of a United States-based agent for the patents-in-suit, the Eastern District of Virginia may exercise personal jurisdiction over CureVac with respect to the pending lawsuit. Moreover, no limitations period would prevent transfer and there is no evidence that plaintiffs brought their claims in bad faith. For those reasons, and because the Court is satisfied

that transfer is in the interest of justice, this case will be transferred to the Eastern District of Virginia.

### ORDER

In accordance with the foregoing, defendant's motion to dismiss for lack of personal jurisdiction in this Court (Docket No. 37) is **DENIED** but, pursuant to 28 U.S.C. § 1631, the action is hereby **TRANSFERRED** to the United States District Court for the Eastern District of Virginia for further proceedings.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 16, 2023