IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| BIONTECH SE, BIONTECH MANUFACTURING GMBH, *and* PFIZER INC.,<br><br>　　Plaintiffs / Counterclaim Defendants,<br><br>　　v.<br><br>CUREVAC SE,<br><br>　　Defendant / Counterclaimant,<br><br>　　*and*<br><br>CUREVAC MANUFACTURING GMBH,<br><br>　　Counterclaimant. | Case No. 2:23-cv-222 |

**OPINION & ORDER**

　　Before the Court is the Motion to Realign Parties submitted by Defendant and Counterclaimant CureVac SE and Counterclaimant CureVac Manufacturing GmbH (collectively "CureVac"). ECF No. 448. The Court has considered the arguments in the parties' briefing and concluded there is no need to hold a hearing. Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J). For the reasons stated herein, the motion is **GRANTED.**

**I.　BACKGROUND**

　　Plaintiffs BioNTech SE, BioNTech Manufacturing GmbH, and Pfizer, Inc. (collectively "BioNTech and Pfizer") filed a complaint seeking declaratory judgment that they did not infringe patents owned by CureVac. ECF No. 1. CureVac filed

counterclaims alleging infringement of the patents BioNTech and Pfizer originally identified, and other patents. ECF No. 56 (Counterclaims and Answer). On June 23, 2023, BioNTech and Pfizer added claims seeking additional declarations of noninfringement and—for the first time—declarations of invalidity. ECF No. 104 (Counterclaims and Answer to CureVac's Counterclaims). About a year and five months later—but still with roughly three months until trial—CureVac filed the instant motion to realign the parties. ECF No. 448. The motion asks the Court to designate CureVac as the plaintiff and BioNTech and Pfizer as defendants and to set the order of proof at trial accordingly.

## II. LEGAL STANDARD

Regional circuit law applies to issues in patent cases that are not unique to patent law. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc* in relevant part); *Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 604 (Fed. Cir. 2015); *Alifax Holding Spa v. Alcor Sci. LLC*, No. 2022-1641, 2024 WL 2932910, at *4 (Fed. Cir. June 11, 2024) (unpublished). "In determining whether to realign the parties, [the United States Court of Appeals for the Fourth Circuit] employs the 'principal purpose' test, in which [the court] determine[s] the primary issue in controversy and then align[s] the parties according to their positions with respect to that issue." *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 172 (4th Cir. 2018), *aff'd*, 587 U.S. 435 (2019) (citation omitted); *see U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995) (quoting *Indianapolis Gas Co. v. Chase*

2

*Nat'l Bank*, 314 U.S. 63, 69 (1941) (recognizing a "duty . . . to look beyond the pleadings and arrange the parties according to their sides in the dispute")).

"[C]ourts have taken a variety of approaches to determin[e] whether to realign the parties" in patent cases where "alleged patent infringers have sued under the Declaratory Judgment Act." *Intervet, Inc. v. Merial Ltd.*, No. 1:06-cv-658, 2006 WL 8553185, at *1 (D.D.C. Dec. 9, 2006) (collecting cases). District courts within the Fourth Circuit treat realignment as a discretionary matter, which is consistent with the practice in other circuits. *See Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*, No. 1:17-cv-252, 2019 WL 2360929, at *1 (D. Md. June 4, 2019) (citation omitted) ("District courts have broad discretion to set the order of proof at trial. In exercising this discretion, courts may realign parties so that the named plaintiff becomes the defendant and the named defendant becomes the plaintiff."); *see also Anheuser-Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d 1339, 1344 (8th Cir. 1996) (reviewing denial of a motion to realign the parties for an abuse of discretion); *cf. Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 5:05-cv-41, 2006 WL 839515, at *3 (N.D. W. Va. Mar. 30, 2006) ("When determining whether diversity exists in a civil action removed from state court, the district court has discretion to realign the parties according to their real interests.").

### III.   ANALYSIS

The principal purpose of this case is to decide whether BioNTech and Pfizer infringed CureVac's patents. And a jury will understand BioNTech and Pfizer's invalidity arguments better if that issue is framed as an affirmative defense to

infringement liability. Therefore, the Court will exercise its discretion to realign the parties such that CureVac—the party with the primary burden on the issue of infringement—is the plaintiff.

When it "look[s] beyond the pleadings," *Indianapolis*, 314 U.S. at 69, the Court finds that patent infringement is the "primary issue in controversy" in this litigation. *Jackson*, 880 F.3d at 172. BioNTech and Pfizer sued first, but their declaratory judgment action is really about avoiding an infringement verdict. That is why the original Complaint sought only a judgment of noninfringement, ECF No. 1 ¶¶ 104–18, and the invalidity claims were added later, once CureVac counterclaimed for infringement, ECF No. 104 (BioNTech and Pfizer's Counterclaims and Answer to CureVac's Counterclaims). With that history in mind, it is easy to see BioNTech and Pfizer's invalidity arguments for what they really are: affirmative defenses to infringement liability. *See id* at 15–19 (invalidity counterclaims), 96–101 (invalidity affirmative defenses as to all the same patents); *see also Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 664 (2015) (recognizing that, though it does not directly negate any element of infringement, "invalidity is . . . a defense to liability" for an "accused infringer").[1]

---

[1] BioNTech and Pfizer point to *Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330 (1945), which stated that as between infringement and validity, "validity has the greater public importance." But that case had nothing to do with alignment of the parties. The *Sinclair* Court was addressing the "tendency among the lower federal courts" at that time to "dispose of [patent cases] . . . on the ground of non-infringement without going into the question of validity." That is not going to be a problem here: The jury will hear both claims. And regardless, the relative importance of the two issues to *society* does not dictate which is the "primary issue in controversy" in the instant litigation. *Jackson*, 880 F.3d at 172.

The Court does not exercise its discretion to realign the parties "simply because [CureVac] assert[ed] an affirmative infringement claim traditionally asserted by the plaintiff." *Great W. Air, LLC v. Cirrus Design Corp.*, No. 2:16-cv-2656, 2022 WL 943027, at *4 (D. Nev. Feb. 1, 2022) (denying a request for realignment "in the absence of evidence of bad faith, forum-shopping or misbehavior"). Though it is not so in every patent case that begins as a declaratory judgment action, here realignment will make the burdens and the evidence in a factually complex case simpler for the jury to follow. It will be easier for a jury to understand this as an infringement case with an invalidity defense than as an invalidity case with infringement counterclaims.

Additionally, the presentation of evidence will be more logical with the parties realigned. If the Court were to maintain the status quo, BioNTech and Pfizer would put on a whole case about invalidity, then the bulk of the factual development as to infringement would happen in the defense case in chief, and BioNTech and Pfizer would only put on affirmative evidence about infringement in rebuttal. (Or, maybe worse, BioNTech and Pfizer would front the infringement issue in their case in chief, making the evidence and the burdens even harder to follow while illustrating that infringement was the central point to begin with.) But with the parties realigned, CureVac as the plaintiff can put on a case in chief that seeks to prove (1) its patents are valid and (2) BioNTech and Pfizer infringed them. Then BioNTech and Pfizer can defend both those points with evidence of their own. That approach is much simpler.

5

The Court is not persuaded by BioNTech and Pfizer's argument that the instant motion is too late. *See* ECF No. 509 at 14–15. The parties have consistently worked together to resolve matters that bear on their burdens and roles at trial. *See, e.g.*, ECF No. 262 (CureVac's notice of settlement with Intervenor Acuitas Therapeutics, Inc.); ECF No. 309 (outlining a joint resolution to BioNTech and Pfizer's motion to reduce the number of asserted claims). Thus, it was reasonable for CureVac to wait to seek realignment until the parties' positions solidified. *See MySpace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 916 (N.D. Cal. 2010) (denying without prejudice a motion to realign the parties as "premature," where the "case [was] in its infancy"). Now, as the settlement conference approaches and the parties ramp up trial preparations, the time is ripe for the Court to decide where the chips have fallen with respect to the principal purpose of the litigation. There is still plenty of time for counsel on both sides to make plans with witnesses and prepare to present their evidence at the appropriate time during trial.[2] And because CureVac raised the possibility of realignment as early as the Rule 26(f) scheduling conference, BioNTech and Pfizer should not be unprepared to adapt at this juncture. *See* ECF No. 499 at 3; ECF No. 519 at 11.

---

[2] BioNTech and Pfizer raise the fact that they "plan to label their exhibits as Plaintiff Exhibits (PX), while CureVac should be labeling theirs as Defendant Exhibits (DX)." ECF No. 509 at 9 n.3. This observation does not change the analysis, and the Court is confident the parties can update their exhibit markings before the February 19, 2025 Final Pretrial Conference. However, the Court is mindful that documents that could be presented to the jury, that were exchanged prior to realignment, could identify the parties according to their former designations. If at the Final Pretrial Conference either party identifies a document that raises this concern, the Court will address it on a case-by-case basis.

This Court is not the first to realign parties in a patent infringement case to make the patent owner the plaintiff. *See, e.g., Plumtree Software, Inc. v. Datamize, LLC*, No. 3:02-cv-5693, 2003 WL 25841157 (N.D. Cal. Oct. 6, 2003). And this decision is consistent with guidance from the Federal Judicial Center on how to manage trial evidence in such complex cases.[3]

Having determined that infringement of CureVac's patents is "the principal issue in controversy" and that changing the order of proof will simplify this case for the jury, the Court will exercise its discretion to "align the parties according to their positions with respect to [the infringement claims]." *Jackson*, 880 F.3d at 172. Accordingly, CureVac will become the plaintiff in this action and BioNTech and Pfizer will be the defendants.

## IV.     CONCLUSION

The Motion to Realign Parties submitted by Defendant and Counterclaimant CureVac SE and Counterclaimant CureVac Manufacturing GmbH (ECF No. 448) is **GRANTED.**

---

[3] The *Patent Case Management Judicial Guide* advises: "The parties' presentations should begin with the patentee's case-in-chief. As some cases are declaratory judgment actions, the patentee may not always be the plaintiff in the action. It nonetheless makes sense to have the patent owner's infringement case presented first as it is the rights conferred to a patentee that form the basis of all patent suits." PETER S. MENELL, ET AL., PATENT CASE MANAGEMENT JUDICIAL GUIDE 8-14 (3rd ed. 2016).

The Clerk is **DIRECTED** to re-style this case "CureVac SE, *et al.* v. BioNTech SE, *et al.*"

The Clerk is **FURTHER DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
January 10, 2025