**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| CUREVAC SE, *et al.* | Civil Action No. 2:23-cv-0222 (JKW) |
| Plaintiffs, | |
| GLAXOSMITHKLINE BIOLOGICALS SA, | ███████████████ |
| Intervenor, | |
| v. | |
| BIONTECH SE, *et al*. | |
| Defendants. | |

<u>**PLAINTIFF-INTERVENOR GLAXOSMITHKLINE BIOLOGICAL SA'S BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**</u>

# TABLE OF CONTENTS

**Pages**

I.  PRELIMINARY STATEMENT ...................................................................................1

II. FACTUAL BACKGROUND ...................................................................................4

    A.    ██████████████████████████.......................4

    B.    ███████████████████████████. ..................4

    C.    Procedural History of This Action.......................................................6

    D.    ██████████████████████████.......................7

    E.    The Prospective Acquisition. ..............................................................8

III. ARGUMENT ...........................................................................................................9

    A.    GSK Is Entitled To Intervene Under Rule 24(a). ................................9

        1.    GSK'S Motion To Intervene Is Timely. ..................................10

        2.    GSK Has An Interest In The Subject Matter Of This Action. ..................14

        3.    GSK's Interest In This Action Would Be Impaired Without Intervention. ...........15

        4.    GSK's Interest Is Not Adequately Represented By Existing Parties To This Litigation. ...........17

    B.    GSK Should Also Be Permitted to Intervene Under Rule 24(b)(1)(B). ................19

        1.    Permissive Intervention Would Also Be Appropriate For GSK To Join CureVac's Patent Infringement Claims Against P/BNT..................20

        2.    Permissive Intervention Would Also Be Appropriate For GSK To Bring Claims For CureVac's Breach Of ████████████ And BioNTech's Tortious Interference. ...................20

IV. CONCLUSION ........................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Title Lending, LLC v. Taylor,*
   420 F. Supp. 3d 436 (E.D. Va. 2019) .....................................................................................11

*BioNTech SE v. CureVac SE,*
   2024 WL 2044828 (E.D. Va. Apr. 12, 2024) ...................................................................17, 18

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
   595 U.S. 267 (2022)......................................................................................................... 10, 11

*Cooper Techs., Co. v. Dudas,*
   247 F.R.D. 510 (E.D. Va. 2007) ..................................................................................... 16, 17

*Ericsson, Inc. v. InterDigital Commc'ns Corp.,*
   418 F.3d 1217 (Fed. Cir. 2005)...........................................................................................9

*Feller v. Brock,*
   802 F.2d 722 (4th Cir. 1986) ..........................................................................................14

*Hill v. W. Elec. Co.,*
   672 F.2d 381 (4th Cir. 1982) ..........................................................................................11

*Holliday v. Long Mfg. Co.,*
   18 F.R.D. 45 (E.D.N.C. 1955) ........................................................................................15

*JLS, Inc. v. Pub. Serv. Comm'n of W. Va.,*
   321 Fed. App'x 286 (4th Cir. 2009) ...............................................................................14

*Marshall v. Meadows,*
   921 F. Supp. 1490 (E.D. Va. 1996) ................................................................................19

*Midwest Realty Mgmt. Co. v. City of Beavercreek,*
   93 F. App'x 782 (6th Cir. 2004) .....................................................................................11

*Nish & Goodwill Servs., Inc. v. Cohen,*
   191 F.R.D. 94 (E.D. Va. 2000) ................................................................................. 15, 17

*Steves & Sons, Inc. v. JELD-WEN, Inc.,*
   323 F.R.D. 553 (E.D. Va. 2018) .....................................................................................10

*Stuart v. Huff,*
   706 F.3d 345 (4th Cir. 2013) ..........................................................................................18

## TABLE OF AUTHORITIES (cont'd)

<u>Page(s)</u>

*Teague v. Bakker*.
   931 F.2d 259 (4th Cir. 1991) ...............................................................................14, 17

**Other Authorities**

Fed. R. Civ. P. 24.....................................................................................................4, 9, 15

Fed. R. Civ. P. 24, Advisory Committee Notes, 1966 Amendment ..............................16

Fed. R. Civ. P. 24(a) ........................................................................................................9

Fed. R. Civ. P. 24(a)(2).........................................................................................9, 15, 22

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................... *passim*

Fed. R. Civ. P. 65...........................................................................................................3

7C Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 1908.2 (3d ed. 2007) ................15

Intervenor GlaxoSmithKline Biologicals SA ("GSK") respectfully files this Motion to Intervene pursuant to Federal Rule of Civil Procedure ("Rule") 24(a)(2). GSK seeks intervention as a matter of right as the exclusive licensee of the patents-in-suit[1] and pursuant to its contract with CureVac SE, which granted GSK, among other things, ███████████████████████████ ██████████████████████. GSK also seeks permissive intervention under Rule 24(b)(1)(B) to bring claims of breach of contract and tortious interference regarding its valuable interests in the patents-in-suit and this case. GSK's proposed Complaint In Intervention for patent infringement, breach of contract, and tortious interference is attached as Attachment A.

## I.    PRELIMINARY STATEMENT

GSK moves to intervene in this suit to join CureVac SE's and CureVac Manufacturing GMBH's (collectively "CureVac") patent infringement claims against BioNTech SE, BioNTech Manufacturing GMBH (collectively, "BioNTech") and Pfizer Inc. ("Pfizer") (all accused infringers collectively as "P/BNT"). As the exclusive licensee to CureVac's patents-in-suit, GSK must intervene to protect its valuable rights in those patents, including its contractual right to █ █████████████████████████████████████████████████████████████████ ███████. Although this suit has been pending for almost three years, GSK can no longer stand on the sidelines given that BioNTech and CureVac's parent company, CureVac N.V., have entered into a purchase agreement under which BioNTech will acquire CureVac (hereinafter, "the Prospective Acquisition"). Ex. 7 at 1 ("BioNTech SE … and CureVac N.V. … announced that they have entered into a definitive Purchase Agreement pursuant to which BioNTech intends to

---

[1] The patents-in-suit, including provisional rights, in dispute throughout this case are: U.S. Patent Nos. 11,135,312 ("the '312 patent"), 11,149,278 ("the '278 patent"), 11,241,493 (the '493 patent"), 11,286,492 (the '492 patent), 11,345,920 ("the '920 patent"), 10,760,070 ("the '070 patent"), No. 11,667,910 ("the '910 patent"), 11,471,525 ("the '525 patent"), 11,576,966 ("the '966 patent"), 11,596,686 ("the '686 patent"), and U.S. Patent Publ. No. 2015/0104476 A1 ("the '476 publication").

acquire all of the shares of CureVac."). CureVac and BioNTech now share a common interest in resolving this litigation quickly and quietly to clear the path for CureVac's acquisition, even if doing so comes at GSK's expense. For these reasons, GSK must intervene because CureVac can no longer adequately represent GSK's interests in this action.

Put simply, CureVac has little or no incentive to press forward with its patent infringement claims against BioNTech—CureVac's purchaser. Therefore, GSK has no confidence that CureVac will vigorously prosecute its infringement claims against BioNTech to a jury verdict in the upcoming September trial as if there were no Prospective Acquisition. ███████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

GSK faces imminent, irreparable harm to its interests in the patents-in-suit and this litigation from the Prospective Acquisition, especially in view of CureVac's repeated failure to abide by its contractual obligations to GSK ████████████████. ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ First, on

February 27, 2025, CureVac ███████████████████ joined with P/BNT to ask the Court to

delay the March 3, 2025 trial date by one week ███████████████████████████

█████████. Second, on March 5, 2025, CureVac again █████████████████ joined with

P/BNT to request to postpone the trial ██████████████████████████████████

█████████. As a result, the Court postponed the trial in this case from March 10, 2025 to

September 8, 2025.  After the Prospective Acquisition announcement, CureVac—for a third time— ████████████████████████████████████████ requesting to postpone July 1, 2025 and July 8, 2025 hearings in CureVac's patent infringement case against BioNTech in Germany.[2] Ex. 1, ¶31; Ex. 6.



Any one of those scenarios would cause GSK irreparable harm.

For these reasons, GSK also brings claims for breach of contract against CureVac and tortious interference against BioNTech for which it seeks injunctive relief.[3]  Specifically, GSK is contemporaneously filing a motion for a temporary restraining order and preliminary injunction against CureVac and BioNTech to cease CureVac's breach of its contractual obligations with GSK, and BioNTech's inducement of such breaches, to preserve GSK's rights and maintain the

---

[2] The July 8, 2025 hearing was later rescheduled to November 18, 2025.  *See* Ex. 16.
[3] GSK's Emergency Motion Pursuant To Federal Rule Of Civil Procedure 65 For Temporary Restraining Order And Preliminary Injunction and associated briefing in support are attached as Attachments B and C.  Pursuant to its contract with CureVac, ███████████████████████████
████████████████████████████████████████████████████████  For the avoidance of doubt, GSK is not requesting this Court address the merits of those claims beyond the extent necessary to enter interim injunctive relief nor asking the Court to award economic relief on those claims.

status quo between the parties.  Attachs. B–C.  Specifically, GSK seeks to enjoin CureVac from breaching its contractual obligations to GSK, and BioNTech from inducing CureVac to breach those obligations with respect to this litigation.

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████    Thus, GSK has a significant interest in the outcome of this litigation and hereby respectfully requests that the Court permit it to intervene in this case under Rule 24.

## II.    FACTUAL BACKGROUND

### A.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████[4]

### B.    ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[4] All emphasis added unless otherwise noted.





5



**C.      Procedural History of This Action.**

On July 25, 2022, P/BNT filed suit against CureVac in the United States District Court for

the District of Massachusetts, requesting a declaratory judgment that the '312, '278, and '493

patents were not infringed by P/BNT's "mRNA vaccine against COVID-19 that BioNTech created

and made available to doctors and patients with Pfizer." D.I. 1 (the "Complaint"). That mRNA vaccine is marketed by Pfizer under the brand name Comirnaty®.

CureVac successfully moved to transfer the action to this District on May 16, 2023. D.I. 53. Shortly after the transfer, CureVac filed its Answer and Counterclaims which asserted that P/BNT infringed the three patents in the declaratory judgment action plus seven other patents and publications, resulting in claims against all the patents-in-suit. D.I. 56. In response, P/BNT filed their own counterclaims for non-infringement and invalidity against all the patents-in-suit. D.I. 104. On June 14, 2024, CureVac dismissed with prejudice its claims related to the '493 patent, the '525 patent, and the '966 patent. D.I. 315. The Court then set the trial in this case to begin on March 3, 2025. D.I. 319.

**D.** ███████████████████████████████████

On February 27, 2025, following the final pretrial conference, the Court issued an order continuing the trial date from March 3, 2025 to March 10, 2025 ("Order"). D.I. 819. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████



On March 6, 2025, the Court continued the trial date from March 10, 2025, to September 8, 2025.  D.I. 826.

**E.    The Prospective Acquisition.**

On June 12, 2025, CureVac N.V. (CureVac's parent company) and BioNTech announced that they "entered into a definitive Purchase Agreement pursuant to which BioNTech intends to acquire all of the shares of CureVac" for approximately $1.25 billion.  Ex. 7 at 1.  Under the deal, "BioNTech and CureVac will effectuate a corporate reorganization of CureVac and its subsidiaries, resulting in BioNTech owning 100% of CureVac's business and interests in CureVac and its subsidiaries" and "CureVac's operating subsidiary [*i.e.*, CureVac SE] will become a wholly owned subsidiary of BioNTech."  *Id*. at 2.  Neither CureVac nor BioNTech notified GSK in

8

advance of June 12, 2025 that CureVac and BioNTech were negotiating a Purchase Agreement. Ex. 1, ¶¶33–34.

After the Prospective Acquisition was announced, on June 16, 2025, CureVac requested that two hearings in its patent infringement case against BioNTech in Germany be postponed ████ ████████████████████████████████████████████████. *Id.* ¶31; Ex. 6.

## III.    ARGUMENT

GSK is entitled to intervene in this action as a matter of right under Rule 24(a)(2) because GSK no longer has any assurance or confidence that CureVac can or will adequately represent GSK's substantial interests in the patents-in-suit ███████████. In view of the Prospective Acquisition, CureVac has little or no incentive to press forward with its patent infringement claims against its purchaser, BioNTech. In the alternative, the Court should allow GSK to intervene under the permissive intervention provision of Rule 24(b)(1)(B).

### A.  GSK Is Entitled To Intervene Under Rule 24(a).

Because a motion to intervene under Rule 24 is not unique to patent law, applicable regional circuit law governs. *See Ericsson, Inc. v. InterDigital Commc'ns Corp.*, 418 F.3d 1217, 1220–21 (Fed. Cir. 2005). Under Rule 24(a), intervention as of right is not discretionary: "the court ***must*** permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action ***may as a practical matter impair or impede the movant's ability to protect its interest***, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In the Fourth Circuit, to intervene as of right under Rule 24(a), an intervenor must show that it "(1) filed a timely request; (2) has an interest in the subject matter of the action; (3) disposition of the action without its presence would impair or impede its ability to protect that interest; and (4) the interest is not adequately represented by the existing parties to the action." D.I. 258 at 10–11 (citing *Houston*

*Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999); and citing *Teague v. Bakker*. 931 F.2d 259, 260–61 (4th Cir. 1991)).

Here, GSK must be permitted to intervene as of right to protect its substantial interests in the patents-in-suit ██████████████████████████. To protect those interests, GSK seeks to intervene to (1) join CureVac's existing patent infringement claims against P/BNT, and (2) bring a claim of breach of contract against CureVac and a claim of tortious interference with contract against BioNTech. *See* Attach. A. Those contract-related claims seek only injunctive relief to ensure that CureVac's conduct going forward in this case does not violate any of its contractual obligations to GSK—obligations ████████████████████████ ██████ designed to protect GSK's valuable interests in this case. As explained below, GSK satisfies all four factors.

### 1. GSK'S Motion To Intervene Is Timely.

GSK's motion is timely because it was filed soon after GSK first became aware that its interests were no longer adequately represented in this case—that is, when it learned of the Prospective Acquisition on June 12, 2025.

As this Court has explained, "to determine whether a motion to intervene is timely, the Court must 'assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion.'" *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 556–57 (E.D. Va. 2018) (quoting *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014)). With regard to the first and third factors, "timeliness is to be determined from all the circumstances, and the point to which a suit has progressed is not solely dispositive." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022) (cleaned up). Rather, "the most important circumstance relating to timeliness is that the [intervenor] sought to intervene as soon as it became clear that the [intervening party's]

10

interests would no longer be protected by the parties in the case." *Id*. at 279–80 (cleaned up); *see also Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982).   Regarding the second factor, prejudice, this Court has reasoned, "adding parties to a case almost always results in some delay," so "delay alone does not mean that intervention should be denied;" rather, the Court must assess "**undue** delay" and "balance any delay or prejudice threatened by intervention with the advantages promised by it." *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 455 (E.D. Va. 2019) (cleaned up).

Here, GSK timely seeks to intervene.  Although this suit has been pending for multiple years and the trial date is approaching, GSK had no reason to intervene until it was blindsided by the public announcement of the Prospective Acquisition, less than one month ago on June 12, 2025.  *See Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782 (6th Cir. 2004) (reversing denial of motion to intervene on timeliness grounds because intervenors' notice of a "tentative" settlement first gave intervenors "reason to believe their interests were not being adequately represented by" the defendant).  On June 12, 2025, GSK first learned that BioNTech had offered to acquire "100% of CureVac's business and interests in CureVac and its subsidiaries" and that that offer had already been "unanimously approved by both BioNTech's and CureVac's management and supervisory boards."  Ex. 7 at 2. ████████████████████████

████████████████████████████████████████████████████

████████████████████████  *See* Ex. 1, ¶¶33–34.   GSK's first knowledge of the Prospective Acquisition on June 12, 2025 thus "alerted" GSK "to the need to seek intervention" because it was GSK's first notice that CureVac and BioNTech were likely to reach "objectionable terms in a proposed settlement."  *See Midwest*, 93 F. App'x at 787–88.

Because of the Prospective Acquisition, GSK ***now*** lacks any assurance that CureVac will protect GSK's contractual rights and interest in the patents-in-suit ▌▌▌▌▌▌▌▌. First, GSK has no confidence that CureVac will pursue this litigation—with a quickly approaching September trial date—with the vigor required against its purchaser, BioNTech. Second, BioNTech and CureVac desire a quick settlement and dismissal of this case before the Prospective Acquisition closes. *See* Ex. 7. Third, because it will soon obtain complete control over CureVac, BioNTech will have the unfettered power to simply dismiss this action with prejudice. And fourth, CureVac could, and likely, will grant, or agree to grant, to BioNTech or other third parties (including Pfizer) licenses to the patents-in-suit (amongst others) that would inflict irreparable harm to GSK's business and its interest in this and other litigations. *See* Attach. C. Taken together, these circumstances would eviscerate GSK's rights to enforce the patents-in-suit ▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌.

GSK has not delayed in seeking to intervene. ▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌

Although the timing of GSK's intervention is late in the case, any prejudice to CureVac or BioNTech is a product of its own making. Indeed, the timing of GSK's intervention is the direct result of the Prospective Acquisition ███████████████████████████████████ ████████████████████████████. Moreover, the prejudice to GSK in no longer having its interests represented in this case far outweighs any supposed prejudice to CureVac, BioNTech, or Pfizer.[7] By intervening, GSK will assert the same patent infringement claims already being litigated by CureVac. If that imposes any burden on P/BNT, it is minimal at best. Regarding GSK's contract-based claims in intervention, those claims are absolutely necessary for GSK to protect its interests ████████████. GSK's Complaint In Intervention, filed concurrently with this Motion as Attachment A, brings claims of (a) breach of contract against CureVac ████ ████████████████████████████████████████████████████████ and (b) tortious interference with contract against BioNTech for knowingly and intentionally inducing CureVac to breach its obligations ████████████████████. These claims seek only injunctive relief to maintain the status quo between the parties, namely to prevent CureVac from, among other things, ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ ████████████████████████████████████

---

[7] Pfizer can hardly complain of any prejudice resulting from GSK's intervention given that BioNTech is indemnifying some portion of Pfizer's liability from this action. Ex. 13, cl. 15.3.
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████ Accordingly, GSK's

additional claims in intervention will cause little if any prejudice to the parties.

For all these reasons, GSK has timely moved to intervene, or in other words, has not

delayed in so doing.

### 2.  GSK Has An Interest In The Subject Matter Of This Action.

GSK has a direct and substantial interest in this litigation.  In the Fourth Circuit, a party

has a "significant protectable interest" in a proceeding where it "stand[s] to gain or lose by the

direct legal operation of the district court's judgment."  *Teague*, 931 F.2d at 261 (quoting

*Donaldson v. United States*, 400 U.S. 517, 531 (1971)).  Even a mere "economic interest" in the

outcome of the proceedings is often considered sufficient to justify intervention.  *See JLS, Inc. v.*

*Pub. Serv. Comm'n of W. Va.*, 321 Fed. App'x 286, 290 (4th Cir. 2009) (finding movants should

have been permitted to intervene as of right where case affected "the amount of income they

expected to earn"); *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986) (reversing denial of

intervention as of right by individual apple pickers who could receive higher wages as a result of

judgment).

Here, GSK has both economic and non-economic interests in the outcome of this litigation.

First, GSK has significant economic interests in the outcome of this litigation.  ████████

███████████████████████████████████████

███████████████████████████████████████

───────────────────

███████████████████████████████████████



In short, there can be no dispute that GSK has a significant protectable interest in the subject matter of this action.

### 3.  GSK's Interest In This Action Would Be Impaired Without Intervention.

As to the third factor, disposition of this action would plainly impair GSK's ability to protect its rights and interests in the patents-in-suit.  This Court has explained that "the impairment prong of Rule 24(a)(2) is met when the disposition of the case would, as a practical matter, impair an intervention applicant's ability to protect his interest in the subject matter of the litigation." *Nish & Goodwill Servs., Inc. v. Cohen*, 191 F.R.D. 94, 97 (E.D. Va. 2000) (citing *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir.1980)); *see also* 7C Wright, Miller & Kane, Fed. Prac.

15

& Proc. Civ. § 1908.2 (3d ed. 2007) ("The rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest."); Fed. R. Civ. P. 24, Advisory Committee Notes, 1966 Amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."). "An applicant's interest is plainly impaired if disposition of the action in which intervention is sought will prevent any future attempts by the applicant to pursue its interest." *Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007).

Here, the disposition of this case would greatly impair GSK's ability to protect its interest in the subject matter of this litigation because GSK is the exclusive licensee of the patents-in-suit ██████████████████████████████████████████. As described above with regard to the first and second factors, BioNTech will soon have complete control over CureVac and thus have the ability to unilaterally dismiss this suit with whatever terms and for whatever amount it decides. ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████

At this stage, all CureVac's incentives overwhelmingly lean in favor of completing the Prospective Acquisition by BioNTech and against protecting GSK's interests. ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████

Likewise, CureVac no longer has any incentive to pursue its claims or defend the validity

of the patents-in-suit. ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████    For all these reasons, the disposition of the case could greatly impair

GSK's interests, and GSK should be allowed to intervene to protect its rights in this litigation.

### 4.    GSK's Interest Is Not Adequately Represented By Existing Parties To This Litigation.

GSK's interests in this litigation are not adequately represented by CureVac because

CureVac has agreed to be acquired by BioNTech, undeniably altering CureVac's ultimate

objectives and incentives in this litigation.  As explained above with respect to the first factor,

CureVac's actions since the Prospective Acquisition have only confirmed that GSK rightly no

longer has any confidence that CureVac will represent GSK's rights in this case.

The Fourth Circuit has cautioned "that the burden on the applicant of demonstrating a lack

of adequate representation 'should be treated as minimal.'"  *Teague*, 931 F.2d at 262 (quoting

*Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see also Cohen*, 191 F.R.D. at

97 ("The burden on the applicant of demonstrating a lack of adequate representation is relatively

minimal.").  Moreover, "[t]here is good reason in most cases to suppose that the applicant is the

best judge of the representation of his own interest and to be liberal in finding that one who is

willing to bear the cost of separate representation may not be adequately represented by the

existing parties." *Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007). Moreover, "[m]any factors may suggest inadequate representation, including divergent interests." *BioNTech SE v. CureVac SE*, 2024 WL 2044828, at *8 (E.D. Va. Apr. 12, 2024), *report and recommendation vacated*, 2024 WL 2988247 (E.D. Va. June 11, 2024), *report and recommendation adopted*, 2024 WL 3201668 (E.D. Va. June 27, 2024). "[I]f the applicant has superior knowledge and stronger incentives, that may also suggest inadequate representation." *Id*. (citing *JLS*, 321 F. App'x at 291). While a "party's representation is presumptively adequate" if "a proposed intervenor's ultimate objective is the same as that of an existing party," such a presumption is "rebuttable . . . by a showing of adverse interests, collusion, or nonfeasance." *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013).

Here, because of its Prospective Acquisition by BioNTech, CureVac no longer has the same interests as GSK in trying the patent infringement claims against BioNTech and Pfizer to a successful result. And, even if CureVac still has some incentive to obtain a successful result from this case, that incentive will disappear whenever the Prospective Acquisition is complete and BioNTech—an accused infringer—controls CureVac. ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████ CureVac's objectives now align with BioNTech's (and Pfizer's) objectives, that is, to dispose of this litigation as soon as possible with minimal expense. These objectives are necessarily adverse to and divergent from GSK's interests. As a result, CureVac cannot adequately represent GSK's interests.

███████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████

Importantly, GSK's intervention must both join CureVac's existing patent infringement claims and add new claims for CureVac's breach of and BioNTech's tortious interference with the ██████████████. Those claims protect GSK's undeniable interests in this litigation in two ways. First, GSK would assert the existing patent infringement claims and ensure they are fully litigated.

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████ For all these reasons, GSK's interests are no longer adequately represented by CureVac in this matter.

**B.    GSK Should Also Be Permitted to Intervene Under Rule 24(b)(1)(B).**

If the Court finds that GSK is not entitled to intervene as a matter of right, permissive intervention under Rule 24(b)(1)(B) is appropriate. Rule 24(b)(1)(B) "only requires a 'question of fact or law in common' and a discretionary finding that intervention will not prejudice the original parties." *Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996) (granting motion to intervene). GSK plainly satisfies each requirement.

**1. Permissive Intervention Would Also Be Appropriate For GSK To Join CureVac's Patent Infringement Claims Against P/BNT.**

As the exclusive licensee to the patents-in-suit, GSK's proposed claims and defenses against P/BNT for infringement, validity, enforceability, and damages involve questions of law and fact identical to those currently brought by CureVac. Those claims and defenses hinge on the very same patents-in-suit and facts at issue in the present case. In addition, GSK's intervention to join CureVac's patent infringement claims will not prejudice P/BNT. Indeed, GSK will assert the same patent infringement claims and validity defenses already being litigated by CureVac. For these reasons, GSK should be permitted to intervene to join CureVac's patent infringement claims under Rule 24(b)(1)(B).

**2. Permissive Intervention Would Also Be Appropriate For GSK To Bring Claims For CureVac's Breach Of ████████████ And BioNTech's Tortious Interference.**

GSK's breach of contract and tortious interference claims—and CureVac and BioNTech's likely defenses—share common questions of fact and law with the patent claims. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

Although GSK's additional claims for breach of contract and tortious interference will admittedly introduce new questions, that should not and does not defeat permissive intervention. Rule 24(b)(1)(B) does not require identity of actions—it merely requires there be "*a* claim or defense that shares with the main action *a* common question of fact or law." Fed. R. Civ. P. 24(b)(1)(B). As GSK will also be pursuing the patent infringement claims already asserted in the main action, it easily meets that standard.

In addition, the interests of justice require that GSK be permitted to protect its interests as an exclusive licensee where CureVac—its collaboration partner and licensor—suddenly has no interest in continuing to prosecute the infringement claims in this suit because of the impending acquisition by its heretofore adversary, BioNTech. As explained above, GSK's contract-based claims are absolutely necessary to ensure that it can prosecute the existing patent infringement claims ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████. Moreover, as noted above, GSK is not seeking any determination on the merits of its contract-based claims; rather, GSK seeks only interim injunctive relief to preserve the status quo. As such, those claims should have little or no meaningful impact on the progress of the original patent claims in this litigation.

Furthermore, CureVac will suffer no prejudice from GSK's intervention into this action.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

21

█████████████████████    As for the breach of contract claims, GSK is seeking injunctive relief to compel CureVac to abide by the terms of ████████████████.  It does not prejudice CureVac to force it to honor the commitments it has already made.  Likewise, P/BNT will not be prejudiced by GSK joining for the same reasons set out above, *i.e.*, because GSK is pursuing identical patent claims to CureVac and the additional tortious interference claims merely prevent BioNTech from inducing or aiding CureVac in breaching its existing obligations.  Lastly, GSK moved to intervene within weeks of learning of the Prospective Acquisition and confirming that its interests in this case were no longer represented by CureVac in view of the acquisition, minimizing any prejudice that intervention could cause.

Accordingly, even if the Court finds that GSK cannot intervene as a matter of right, the Court should allow GSK's permissive intervention under Rule 24(b)(1)(B).

## IV.    CONCLUSION

For the reasons set forth above and pursuant to Rule 24(a)(2), GSK respectfully requests intervention as of right in the present case.  In the alternative, GSK should be granted permissive intervention under Rule 24(b)(1)(B).  For these and the foregoing reasons, GSK respectfully requests that the Court grant its Motion and accept the Complaint In Intervention (attached as Attachment A) for docketing.

Respectfully submitted,

Dated: July 7, 2025                    By:    /s/ Justin Wilcox
                                              Justin P.D. Wilcox (VSB No. 66067)
                                              David J. Shaw (VSB No. 82628)
                                              jwilcox@desmaraisllp.com
                                              dshaw@desmaraisllp.com
                                              DESMARAIS LLP
                                              1899 Pennsylvania Ave., NW, Suite 400
                                              Washington, D.C. 20006
                                              Telephone: 202-451-4900

                                              John M. Desmarais (*pro hac vice* forthcoming)
                                              jdesmarais@desmaraisllp.com
                                              DESMARAIS LLP
                                              230 Park Avenue
                                              New York, NY 10169
                                              Telephone: 212-351-3400

                                              *Attorneys for Plaintiff-Intervenor*
                                              *GlaxoSmithKline Biologicals SA*

23